UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEAN A. SINIBALDI,

v.                                          CASE NO.: 8:09-cv-2440-T-17-MAP
                                            CASE NO.: 8:02-cr-00111-EAK-MAP

UNITED STATES OF AMERICA.
_____/

## ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURUSANT TO 28 U.S.C. SECTION 2255

THIS cause is before the Court on Dean A. Sinibaldi's amended 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence (hereinafter "motion" or "motion to vacate") (Doc. 7) and the government's response thereto. (Doc. 23). A review of the record demonstrates that the motion to vacate must be **DENIED**.

## BACKGROUND

*Factual Background*

Co-defendants Greg Shultz and Danny Wey created Millennium Investment, Inc. ("MII") on September 19, 1996. (Doc. CR-1201).[1] Subsequently, Millennium Investment, Inc. Trust ("MIIT") was established and began marketing and selling unregistered notes. *Id.* These notes were supposedly exempt from state and federal regulation under the "commercial note exemption" for notes maturing in less than nine months. (Doc. CR-1212). However, after failing to meet regulation requirements, MIIT purported to have a "foreign" exemption because the notes issued by MIIT allegedly included a "banker's acceptance" provision from the Bank of

---

[1] References to 8:02-cr-00111-EAK-MAP-4 will be denoted as "(Doc. CR-_)" and the appropriate docket number.

1

Bermuda that guaranteed the notes in the event of default. (Doc. CR-1201). However, the alleged relationship with the Bank of Bermuda and the guarantee never existed. (Doc. CR-1207).

Sinibaldi was MIIT's top salesperson. (Doc. CR-1213). From December 1997 to June 1998, Sinibaldi was involved in fifty-eight MIIT transactions. (Doc. CR-1223). Sinibaldi assured clients that MIIT notes were guaranteed by Bank of Bermuda. Sinibaldi received compensation for his sales with MIIT. (Doc. CR-1213). Despite over six million dollars investors invested in MIIT securities, MIIT began experiencing cash-flow problems, and by July 1999, had over one million dollars in past-due notes. (Doc. CR-1230, CR-1213). MIIT ceased operations by summer of 1999. (Doc. CR-1213).

*Relevant Procedural History*

On April 21, 2005, a jury found Dean A. Sinibaldi guilty of one count of conspiracy to commit securities fraud, wire fraud, and mail fraud; two counts of securities fraud; three counts selling unregistered securities; four counts of mail fraud; one count of conspiracy to commit money laundering; eight counts of engaging in illegal monetary transactions; and seven counts of money laundering. (Doc. CR-980). On August 12, 2005, the Court sentenced Sinibaldi to 168 months incarceration, followed by 36 months of supervised release. (Doc. CR-1121). Sinibaldi filed a notice of appeal on August 18, 2005. (Doc. CR-1122). The Eleventh Circuit affirmed Sinibaldi's conviction and sentence on March 17, 2008. (Doc. CR-1871), *cert. denied*, 129 S. Ct. 663 (2008). Sinibaldi originally filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence on December 1, 2009. (Doc. 1). He is proceeding on his amended motion to vacate filed December 21, 2009. (Doc. 7).

*Petitioner's Allegations*

Sinibaldi contends that he is being held in violation of the Constitution and laws of the United States on four grounds. In Ground One, Sinibaldi contends that counsel was ineffective in providing him assistance during the plea process. Sinibaldi argues that he received improper advice and as a result did not knowingly or voluntarily refuse the plea offer. In Ground Two, Sinibaldi contends that his conviction should be overturned as result of *United States v. Santos*, 128 S. Ct. 2020 (2008), which changed the interpretation of the money laundering statute under which he was convicted. In Ground Three, Sinibaldi contends that his appellate counsel provided ineffective assistance by failing to argue several issues on appeal. In Ground Four, Sinibaldi contends that his counsel was ineffective during the sentencing proceedings. Sinibaldi argues that counsel did not advocate 18 U.S.C. § 3553(a) factors or any other mitigating factors. (Doc. 7). Lastly, Sinibaldi claims that he is entitled to an evidentiary hearing to resolve the matters presented in the section 2255 motion. *Id.*

*Respondent's Allegations*

The government contends that each of the four grounds argued by Sinibaldi in the 28 U.S.C. §2255 motion are without merit and thus the motion to vacate should be denied. (Doc.23).

## DISCUSSION

### I. *Ineffective Assistance of Counsel*

The Sixth Amendment to the United States Constitution states that "in all criminal prosecutions, the accused shall enjoy...the Assistance of Counsel for his defence." *U.S. Const. amend. VI.* The right to counsel provision provides the accused the right to effective assistance of

3

counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance claims are cognizable under 28 U.S.C. §2255. *See Lynn v. United States*, 365 F.3d 1225, 1234 n.17 (11th Cir. 2004) (ineffective assistance claims should be decided in section 2255 proceedings). To make out a claim of ineffective assistance, the petitioner must show "that the counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* It is presumed that a "lawyer is competent to provide the guiding hand that the defendant needs." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Thus, "the burden rests on the accused to demonstrate a constitutional violation." *Id.*

The Court must determine "whether, in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance" when assessing the "deficient performance" prong of the *Strickland* test. *Strickland*, 466 U.S. at 690. The proper standard for attorney performance is an objective standard of reasonably effective assistance. *Id.* at 687-88. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions on the exercise of reasonable judgment." *Id.* As for the "prejudice" prong, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Reasonable probability is defined as a "probability sufficient to undermine confidence in the outcome." *Id.* A defendant is required to prove both prongs of the *Strickland* test. *Id.* at 697. Sinibaldi failed to prove that his counsel's assistance was deficient or that he was prejudiced in his claim of ineffective assistance of counsel.

## A. *The Plea Offer*

The two-prong *Strickland* test is applicable "to ineffective assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). To succeed in this claim, "a petitioner must prove "serious derelictions on the part of counsel sufficient to show that the plea was not, after all, a knowing and intelligent act." *Downs-Morgan v. United States*, 765 F.2d 1534, 1539 (11th Cir. 1985). The first prong requires the petitioner to show that his plea was not voluntary because he received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases. *Scott v. United States*, 325 Fed. Appx. 822 (11th Cir. 2009). The second prong requires the petitioner to show "a reasonable probability that he would actually have pled differently but for his counsel's alleged advice." *Scott v. United States*, 325 Fed. Appx. 822, 824 (11th Cir. 2009).

Sinibaldi claims that he would have pled guilty and cooperated with the Government for a reduced sentence had counsel provided "competent, clear, and substantive advice regarding the risks and rewards of foregoing the plea." (Doc. 12). Specifically, Sinibaldi claims that counsel did not: (1) discuss the likelihood of success at trial; (2) discuss the nature of conspiracy, or the liability "vis-à-vis" co-conspirators; (3) explain that Sinibaldi was facing a ten to fifteen year sentence by going to trial; (4) explain the benefits of acceptance of responsibility or cooperation; or (5) explain the federal conviction rate. *Id.*

Counsel has the duty of providing reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. It is clear from the correspondence between Sinibaldi and counsel during the plea process that counsel fulfilled that obligation. Sinibaldi and counsel received and discussed a document during a meeting with the Government on July 18, 2003, outlining and explaining the conspiracy charges. (Doc. 23-2, Exhibit "A"). In his affidavit, counsel states that Sinibaldi told

him that he would not plead guilty, would not go to prison, and that he was innocent. (Doc. 23-3, ¶ 5). On August 19, 2004, counsel received a handwritten note from Sinibali that said only "win, win win." (Doc. 23-3, Exhibit "C"). Counsel's affidavit and supporting notes show that in September 2004, he and Sinibaldi discussed the sentencing guidelines with reference to Sinibaldi's case. (Doc. 23-3, ¶6, Exhibit "B"). The May 1, 2006 letter sent by counsel to Sinibaldi states that the parties discussed the guidelines and discussed a plea deal, but Sinibald demanded to go to trial. (Doc. 23-3, Exhibit "D").

Sinibaldi's motion to vacate demonstrates that he understood the terms of the plea offer when he stated that the offer before trial was for five-year imprisonment. (Doc. 7). Sinibaldi stated in his November 5, 2005 letter to counsel that he would not work with the government or give up his right to appeal without the guarantee of a reasonable sentence. (Doc. 23-3, Exhibit "H"). Sinibaldi chose to refuse the plea offer; went to trial, and subsequently filed an appeal. Only after he lost at trial and lost his appeal did Sinibaldi claim that counsel's assistance during the plea process was deficient. However the record, as discussed above, demonstrates that Sinibaldi's claim that counsel was ineffective during the plea process is without merit.

B. *On Appeal*

The two-prong *Strickland* test is applicable to claims of ineffective assistance of appellate counsel. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). A petitioner must show that appellate counsel was objectively unreasonable in not raising the omitted issue[s] to prevail on a claim of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259 (2000). The Supreme Court established that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood

of success on appeal." *Id.* (citing *Jones v. Barnes*, 463 U.S. 745 (1983)). Even though a *Strickland* claim for ineffective assistance of appellate counsel is possible, it is difficult to demonstrate that counsel was ineffective. *Id.* (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome."). To demonstrate prejudice, Petitioner must establish a reasonable probability that, but for appellate counsel's alleged error, he would have prevailed on appeal. *Id.* at 286.

Two of the arguments raised in regard to Sinibaldi's appeal have already been ruled on by the Eleventh Circuit Court of Appeals. (See below). A district court need not consider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis*, 211 F.3d 13401, 1343 (11th Cir. 2000). Generally, "once a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *Id.* The Court is afforded broad discretion to determine whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963).

In his section 2255 motion, Sinabldi contends that counsel should have argued that Mr. Stutts was not properly qualified as a witness. (Doc. 12). The Court of Appeals ruled that "the district court properly limited the scope of Stutts' testimony, gave the jury appropriate limiting instructions...explained the role of an expert witness, and committed no error." *United States v. Tyrrell*, 269 Fed. Appx. 922, 930 (11th Cir. 2008)[2]. Sinibaldi also contends that counsel should have argued that the Court erred in allowing the use of a yellow pages advertisement during trial. (Doc. 12). The Court of Appeals ruled that the advertisement was "inextricably intertwined with the evidence of the charged offense" and both "relevant and admissible." *Tyrrell*, 269 Fed. Appx.

---

[2] Gene A. Tyrrell was a co-defendant in the criminal case.

7

at 931 (citing *United States v. Herre*, 930 F.2d 836, 837 (11th Cir. 1991)). Both of those issues were heard and decided on direct appeal and will not be re-litigated in this motion.

Sinibaldi also claims that counsel was ineffective for failing to challenge the money laundering conviction based on the Supreme Court's changed interpretation of the word "proceeds" in *United States v. Santos*, 128 S. Ct. 2020 (2008). Sinibaldi's claim lacks merit for the reasons stated below in Section II.

Lastly, Sinibaldi claims that counsel was ineffective when he failed to challenge the jury's verdict under unanimity grounds. It is well established that "a jury in a criminal case cannot convict unless it unanimously finds that the Government has proven each element" of the offense. *Richardson v. United States*, 526 U.S. 813, 817 (1999). Sinibaldi argues that the jury was presented with a variety of acts for which he could have been found guilty of the crime, but was never instructed to unanimously agree on which act constituted the element necessary for conviction. (Doc. 12). However, it is established in the Eleventh Circuit that "where an indictment charges several means of a violation of [a] statute in the conjunctive, proof of only one of the means is sufficient to convict." *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir. 1983).

In this case, the Court clearly instructed the jury that the verdict must be unanimous:

> [A]s to each conspiracy charged, it is not necessary for the Government to prove that the Defendant under consideration willfully conspired to commit *all* of the alleged objectives of the specific conspiracy. As to each conspiracy, it would be sufficient if the Government proves beyond a reasonable doubt that the Defendant willfully conspired with someone to commit *one* of the alleged objectives; but in that event, in order to return a verdict of guilty, you mu[st] unanimously agree upon *which* of the alleged objectives of the conspiracy the Defendant conspired to commit.

8

(Doc. CR-992 at 14-15).

As such, there is no evidence to support Sinibaldi's claim that appellate counsel's assistance was deficient or that Sinibaldi was prejudiced on appeal because the Court instructed the jury properly on the unanimity issue.

### C. *At Sentencing*

The Sixth Amendment right to effective assistance of counsel also applies to sentencing proceedings. *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008). The *Strickland* test is applicable to the determination of counsel's efforts at sentencing. In judging the investigation and presentation of mitigating factors as sentencing proceedings, the Court must give "a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Counsel is not required to investigate and present all available mitigating evidence in order for counsel's assistance to reasonable. *Ford*, 546 F.3d at 1333 (citing *Burger v. Kemp*, 483 U.S. 776, 794-95 (1987)).

Sinibaldi contends that had counsel filed a sentencing memorandum and argued 18 U.S.C. §3553(a) factors before the court, his sentence would have been lower. After applying the *Strickland* test to this allegation, there is no evidence of ineffective assistance of counsel at sentencing. During the sentencing proceedings, the Court asked counsel if he wished to present information in mitigation of the sentence and counsel answered in the affirmative. (Doc. CR-1421 at 82). Counsel argued that Sinibaldi was less involved and less culpable in the conspiracy than the other co-conspirators, *Id*, 86-87, 109; that Sinibaldi settled in a lawsuit with the State's security agency and paid restitution, *Id.* at 84; that Sinibaldi had limited knowledge of the operation, *Id.* at 84-85; that Sinibaldi voluntary surrendered his insurance license, *Id* at 85; and that the Court should use its discretion to give Sinibaldi a lesser sentence due to his limited

9

knowledge and control in the fraudulent scheme. *Id.* at 87-88. Counsel also called six witnesses, including Sinibaldi's wife, to speak about Sinibaldi's good character. Counsel specifically asked the court to depart downward from the recommended sentence guideline range. *Id.* at 105. The Court considered all of the factors identified in 18 U.S.C. §3553(a). *Id.* at 118.

Counsel clearly provided Sinibaldi "professionally competent assistance" during the sentencing proceedings. *Strickland*, 466 U.S. at 690. Counsel presented to the Court several mitigating factors that he thought would influence the Court to be lenient and to impose a lesser sentence. There is no evidence that counsel's assistance during the sentencing proceeding was deficient. Moreover, there is no evidence that Sinibaldi was prejudiced from counsel's assistance. Sinibaldi claims that prejudice is proven when ineffective assistance of counsel results in increased jail time. (Doc. 12) (citing *Glover v. United States*, 531 U.S. 198 (2001)). It is clear that Counsel did not cause Sinibaldi to receive an enhanced sentence. Rather, the Court imposed a sentence that it found sufficient.

## II. *United States v. Santos* Claims

In Ground Two of his section 2255 motion, Sinibaldi contends that his conviction should be overturned because of the *United States v. Santos*, 128 S. Ct. 2020 (2008) decision. Similarly, Sinibaldi claims in Ground Three that counsel was ineffective for failing to raise the *Santos* decision on appeal. Sinibaldi's claim that his conviction should be vacated because *Santos* applies retroactively is cognizable under section 2255. *See e.g., Bousley v. United States*, 523 U.S. 614, 620-21 (1998) (explaining that where a defendant was convicted "for an act that the law does not make criminal," he raises a claim cognizable in a section 2255 proceeding); *United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005) (finding that a claim collaterally attacking a

conviction based on the retroactive application of a Supreme Court case is cognizable under section 2255).

The Supreme Court held in *Santos* that the word "proceeds" in 18 U.S.C §1956, the "laundering of monetary instruments" statute under which Sinibaldi was convicted, referred only to the "profits" of criminal activity and not to the "receipts." *Santos*, 128 S. Ct. 2020, 2031 (2008). In light of this decision, Sinibaldi claims his conviction should be overturned because the "government relied on income from the Millennium sales/investments to support its money laundering convictions" (Doc. 12), and Millennium had no profits. (Doc.7). Rather, Sinibaldi argues that the money utilized in the transactions listed in the second superseding indictment was only receipts from unlawful activity. Thus, the definition of "proceeds" under the statute was not met. However, on May 20, 2009, Congress amended §1956 by defining the term "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, *including the gross receipts of such activity*. 18 U.S.C. §1956 (c) (9) (emphasis added). Thus, the amended statute effectively overturns the *Santos* decision and renders Sinibaldi's Ground Two and Ground Three claims meritless.

## II. *Evidentiary Hearing*

A petitioner has the burden of establishing the need for an evidentiary hearing. *See Birt v. Montgomery*, 752 F.2d 587, 591 (11th Cir. 1984). Under rules governing Section 2255 cases, Rule 4(b), a district court faced with a section 2255 motion may make an order for its summary dismissal "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 13103 (11th Cir. 2002) (quoting 28 U.S.C. foll. § 2255). The Court is not required to hold an evidentiary hearing where the record makes "manifest the lack of merit of a

Section 2255 claim." *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984). As stated in the above discussion, Sinibaldi has not established any basis for an evidentiary hearing because the issues he raises lack merit.

## SINIBALDI'S REPLY TO THE GOVERNMENT'S RESPONSE

Sinibaldi's arguments in his reply are without merit. The Court notes that the State of Florida initiated the investigation into Sinibaldi's activities in 1999. Pursuant to its investigation, the State of Florida conducted civil enforcement actions against several Defendants named in the superseding indictment in the criminal case, and the civil enforcement actions resulted in the entry of injunctions against some Defendants.

The investigation was brought to the attention of the Securities Fraud Task Force of the Middle District of Florida in early 2001. All Defendants were sent "target letters" in May 2001. A federal grand jury investigation commenced in 2001, which resulted in the indictment of the Defendants. The Defendants subsequently pled guilty or went to trial. Sinibaldi was one of the latter. Pursuant to the analysis above, the Court found that the 28 U.S.C §2255 motion has no merit. Nothing in the reply persuades this Court otherwise.

Accordingly, it is **ORDERED** that Sinibaldi's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 7) is **DENIED**. The Clerk is directed to enter judgment against Sinibaldi in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a

district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances. Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE and ORDERED** in Chambers, in Tampa, Florida, this 23 day of July, 2010.



ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record.